PEOPLE ex rel. HUSSEY v. WOODS, Police Com'r.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

MUNICIPAL CORPORATIONS ⊂⊃185—REMOVAL OF POLICE OFFICER—BRIBERY—SUFFICIENCY OF EVIDENCE.

In proceedings before the police commissioner of the city of New York for the removal of a police inspector for taking a bribe to permit a saloon to remain open on Sunday in violation of law, evidence *held* insufficient to show the inspector's guilt.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 492–509; Dec. Dig. ⊂⊃185.]

Mills and Putnam, JJ., dissenting.

Certiorari to review a determination of Arthur Woods, as Police Commissioner of the City of New York, dismissing James E. Hussey from the police force. Determination annulled, writ sustained, and relator reinstated.

Argued before JENKS, P. J., and THOMAS, MILLS, RICH, and PUTNAM, JJ.

Herbert C. Smyth, of New York City (Francis L. Wellman and Roderic Wellman, both of New York City, on the brief), for relator.

Edward A. Freshman, of Brooklyn (Thomas F. Magner, of Brooklyn, on the brief), for respondent.

THOMAS, J. The trial was conducted with dignity and fairness by the presiding officer, who was contented to act as a judge, undisturbed by the zeal of a prosecutor. The questions have been presented to this court with the frankness that gives aid to the court and protects the interests involved. The final question here is whether a police inspector may be legally found guilty of taking a bribe to protect from police interference a hotel keeper in the illicit sale of liquor (1) upon evidence of the manager that for a considerable period he paid money monthly to a policeman for that purpose, and of the policeman that he so received it and paid it, less a certain percentage, to the defendant, his superior, upon the understanding that such protection should be continued; (2) upon further evidence that over such period of time the hotel manager violated the law and was not disturbed. Hussey was the inspector. Wren was a patrolman assigned to the inspector's office. Dougherty was the manager of the hotel. The testimony of Wren and Dougherty is to the effect that, previous to Hussey's inspectorship, there had been the same payment and receipt of money, and that Wren had, with a deduction for himself, paid the balance of the monthly payment of $75 to the inspector, and that the practice continued after Hussey became inspector, from the late fall of 1909 to March, 1911. If Wren should be believed, the defendant was guilty, and was properly dismissed from the force.

Wren by legal compulsion gave evidence before the grand jury, thereby, by his view, securing immunity from punishment. He was not indicted. The confessed criminal escaped by implicating his superior. Hussey was a well-known officer, with a record indicating some offenses of a disciplinatory nature. He had received approval as an exemplary officer from Mayor Gaynor. Upon the trial, former Police Commissioner Baker testified to his appreciation of his ability and integrity, and others, who as officials or as individuals had had relations with him, commended him. But, aside from this opinion of others, he was a man without the stain of a known bad deed, and entitled to the merit that the law ascribes to such a person. He denied what Wren said concerning his connection with the money. Who, then, should be believed, the criminal accuser, or the man of good repute and character, apparently good? I do not need to use the expresson "presumption of innocence," which is associated so intimately with criminal trials, although there is full authority for employing it. People ex rel. Kelly v. Waldo, 161 App. Div. 731, 146 N. Y. Supp. 581. But

there is at least the presumption that Hussey was an honest man. As such, his testimony must be preferred to that of a dishonest man—a criminal, who could only escape by accusing another. But did Hussey's testimony impair his credibility? I find nothing that so affects it. By that I mean that what he said as a witness was said with clearness and with apparent candor. Upon its face it reasonably shows zeal, activity, and persistency in pursuing police methods to discover whether liquor was sold illegally at the Monument Hotel, conducted by Dougherty.

But it is urged that Wren is corroborated because Dougherty was not detected. The argument is that he did not succeed in discovering an offense, and that the failure is evidence that he was protecting the house against detection. The unsuccessful are apt to be condemned, but failure after due effort does not impute bad motive, or tend to prove guilt. Hussey, as the record shows, used the methods known to the police department. If it be proved that they were not sincere, or that Wren or Hussey gave warning to Dougherty, then the activity goes for naught, and Hussey's complicity appears. But where is the evidence of insincerity, and where of warning to the offender? So it comes to this: That there was no detection of unlawful liquor selling at that place, although hundreds of arrests for similar offenses were made in that precinct under Hussey's rule. But look at this more closely. Hussey made requisitions for and obtained men not known to Dougherty. They tried, and also failed. Efforts were made from police headquarters, and failed. Surely Hussey was not responsible for that. But what impresses me most of all is that at present, when the orders issued by Mayor Gaynor concerning plain clothes men and arrests without warrants cannot affect the efficiency of police effort, Dougherty is violating the law in selling liquor on Sunday without serving meals, as he was then. Dougherty testified:

"Q. And who do you pay now? A. Nobody. Q. No; now you are not breaking the law, now, Sundays, is that right? A. Well, I will tell you, Counsellor; if you show me anybody that doesn't break the law, that has a liquor saloon, I will answer your question. Q. Well, then, you are doing just the same now as you did before? A. Doing just the same. Q. Doing just the same thing, and if I can show you anybody in New York that isn't doing the same thing, then you won't do it? A. Yes; that is open for business on Sundays, saloons, I mean. Q. Yes; that is just what I thought.

"Deputy Commissioner Godley: The difference is you don't pay for it now, is that it?

"The Witness: No, sir; I don't pay anything. Q. You get just the same without paying for it? A. Yes, sir; just the same."

Then he states that he has "been getting it" without paying for it for a year. I quote this evidence to prove how illogical it is to infer that Hussey was guilty because he did not discover the guilt and expose the offender to punishment, when the accusing offender still offends with impunity and without price, and testifies to it before a head of the police department. The testimony of Mr. Baker, who was police commissioner from July, 1909, to October, 1910, throws considerable light on that period and the difficulties that beset police work. He stated:

"There were some places that were difficult to get. I am free to say that the excise law wasn't a popular law in New York City, and its enforcement

was never considered very popular. The mayors felt the same way about it, and the police commissioners, too."

And yet it is urged that Hussey, who lived under the influence of such administrations, is inferably guilty of bribery because he did not cause the arrest of Dougherty. It is suggested that the commissioner knows something of the history of Hussey and his environment that better qualifies him to judge of Hussey's guilt. The respondent must be judged by what the record proves, and nothing more. Although the specifications charge that Hussey was bribed by Dougherty with reference to his keeping a house of ill fame, he was not found guilty of that, and the evidence acquits him of it. The evidence to sustain the second charge relating to the protection of a gambling house is not sustained by the evidence.

The determination should be annulled, writ sustained, and the relator reinstated, with $50 costs and disbursements.

JENKS, P. J., and RICH, J., concur.

MILLS, J. I dissent. It seems to me that this decision amounts to substituting our judgment for that of the commissioner upon what is merely a question of veracity of opposing witnesses. I do not understand that we are authorized to do this, unless we reach the conclusion that the finding of the commissioner was clearly against the greater weight of the evidence. People ex rel. Burke v. Waldo (2d Dept.) 163 App. Div. 28, 147 N. Y. Supp. 1092.

I do not think that we can here so conclude. The real question here is one of the veracity of witnesses—that is, whether the police officer, Wren, who actually took the bribe money, and the hotel keeper, who actually paid it, or the accused inspector, should be believed; the hotel keeper not, however, corroborating Wren as to the actual delivery of any of the money to the inspector, and as to that fact the former patrolman, Wren, and the accused inspector, standing alone in direct conflict. The fact that no arrest at the place was made seems to me to give some corroboration to the prosecution's case; but, whether it did or not, I think that we should respect and uphold the decision of the commissioner upon the question of the veracity of opposing witnesses whom he, or rather his trial deputy commissioner, saw under oral examination. We very frequently affirm judgments for plaintiffs in negligence cases where the verdict for the plaintiff rests upon evidence no greater in quantity or quality than that presented in this record in support of the decision of the commissioner; and I suppose that the same rule of review here applies to both classes of cases.

This record is barren of anything to indicate prejudice against the accused on the part of the commissioner or the trial deputy commissioner; and, as the opinion of Mr. Justice THOMAS states in effect, the trial was evidently conducted in a most exemplary manner. Therefore I feel constrained to dissent from the decision annulling the determination and sustaining the writ, and vote that the determination be affirmed and the writ dismissed.

PUTNAM, J., concurs.