THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BERTRAM H. LEARMAN, Appellant.

Fourth Department, May 7, 1941.

*John S. McGovern,* for the appellant.

*Leo J. Hagerty, District Attorney [Gordon Steele* and *Maurice Frey, Assistant District Attorneys,* of counsel], for the respondent.

CUNNINGHAM, J. The defendant was tried in the Erie County Court upon four counts of an indictment. These counts charged him with the crimes of assault in the second degree, grand larceny in the second degree, extortion and oppression. He was convicted upon all four counts.

The defendant is a member of the police force of the city of Buffalo and has been since February, 1929. He was made a lieutenant of the force on December 31, 1937. He served overseas in the World War and was honorably discharged from the army at the end of the war. He had never been in any trouble before he was charged with the crimes of which he was convicted.

The complainant in this case is Joseph P. Rogers.

Lieutenant Learman (the defendant) and Officer Phillips, who were riding in a police patrol car on July 15, 1938, testified that they saw an automobile parked on a public street nosed into the curb, with the right rear wheel about four feet from the curb and the left rear wheel extending out farther toward the car tracks; that a man was fumbling with the front door of the car; that they parked the police car and went over to the parked car. They further testified that Rogers (the complainant) was out on the street holding on to the door handle of the parked car to prevent him from falling; that the smell of liquor on Rogers' breath was very strong. Learman testified that Rogers was very drunk. The two officers then placed Rogers in the police car and Learman drove him to the police station and Officer Phillips followed in Rogers' car. At the police station Rogers was charged with public intoxication. The officers, according to their statement, did not

see Rogers drive his car. Therefore, they could not arrest him without a warrant for driving while intoxicated.

Learman says that he practically had to carry Rogers into the station. Lieutenant Moran, who was at the desk in the police station, says that Learman brought Rogers into the station, carrying him under one arm, with his left arm under Rogers' right arm, and walked him up to the desk; that Rogers talked in a mumbling tone; that, in answer to a question as to where he lived, Rogers said he lived in Blaisdell, then Lackawanna, then Orchard Park and then Lackawanna. The arrest card contained a notation that Rogers was too drunk to sign it. According to the card Rogers was brought into the station at seven-thirty P. M., which Lieutenant Moran says was the correct time. Moran did not see Rogers stand alone on his feet.

Rogers claims that, while he was at the desk in the police station taking his property out of his pocket and placing it on the desk, Learman, without any reason therefor, struck him on the chin and knocked him down, causing him to become unconscious.

Learman says that after Rogers' property had been placed on the desk he went to get the keys to the cell room and he heard a noise and looked around and saw Rogers staggering toward the record room and that Rogers bumped into the door and fell over backwards, striking his head on the floor.

Lieutenant Moran says that he started to make out the arrest card and suddenly he heard Rogers bump into the door and fall on the floor; that he did not see Learman hit Rogers and that Rogers was not assaulted in his presence or to his knowledge.

Learman and Moran then placed Rogers on a chair and Rogers started to throw up and slid off the chair.

Officer Phillips testified that when he approached Rogers' car it was parked on an angle; that Rogers was standing in a staggering position; his breath smelled of liquor and he used foul language; that Rogers was drunk and staggering. When Phillips entered the police station Rogers was sitting on a chair and throwing up, and as Phillips walked by him he slid off, still throwing up.

Officer Ruback saw Rogers between nine and ten o'clock on the evening of the arrest. He went back to Rogers' cell to see what Rogers wanted and noticed that he had vomited all over and he thought that he ought to be changed to another cell on that account, so Ruback and Lieutenant Learman took Rogers to a different cell. He says that at that time Rogers was intoxicated; that he could not stand on his feet and had to be helped around.

The next morning Rogers was arraigned in City Court and plead guilty to the charge of public intoxication.

On the trial Rogers swore that he was not intoxicated at the time of his arrest; that he cashed a pay check on the day of his arrest and that his wife was with him when he did so. He said at first that he left his wife at one-thirty and then later he changed that time to twenty minutes to six. He said that he had three glasses of beer and a ten-cent glass of whisky in the afternoon. There is evidence by a bartender that at about five o'clock Rogers was in his saloon and was alone and that he served him with one glass of beer. It was not until about seven-thirty that Rogers was arrested, so he had plenty of time to do considerable drinking before his arrest.

Certainly the fair preponderance of the evidence shows that Rogers at the time of his arrest was helplessly drunk; that his mind was confused; that his capacity to think clearly was impaired and that he had lost control of his faculties. Even with Learman's testimony standing alone the fact that Rogers plead guilty to public intoxication is sufficient for a jury to find that Rogers was intoxicated at the time of his arrest. But with the supporting evidence of the other witnesses it would be against the weight of the evidence for a jury to find that Rogers was not intoxicated at that time. When the testimony of Learman that he did not strike Rogers, the presumption of his innocence, the condition of Rogers at the time of the alleged assault, the absence of any motive for an assault, and the fact that it was claimed to have taken place in a public room visible to passersby on the street, are considered, there certainly must arise a reasonable doubt as to the truth of the charge that Learman assaulted Rogers. Furthermore, the story of Learman, supported by Lieutenant Moran, that Rogers bumped into a door, is corroborated to some extent by the fact that Rogers had black and blue marks on his chest, the cause of which he did not know.

The evidence was wholly insufficient to convict the defendant of the crime of assault in the second degree.

The defendant has also been convicted of the crime of grand larceny in the second degree, it being alleged that he took fifty dollars from the person of Rogers. Rogers testified that during the afternoon his wife gave him fifty dollars and he put it in his coin purse and put the coin purse in his pocket. This is all the evidence there is to show that Rogers had fifty dollars on his person when he was arrested. Rogers does not claim that he saw the money in the police station. Lieutenant Moran testified that Rogers had only ten cents and that there were only ten cents in the coin purse. Learman's testimony was to the same effect. The arrest card shows that Rogers had only ten cents in his coin purse. Certainly

it is not fair to infer from this evidence that a man who had been around saloons drinking during a large part of the afternoon did not spend or give away money which he had on his person when he started out. Assuredly there must in this case exist a reasonable doubt as to the truth of the charge that Learman took from the person of Rogers the sum of fifty dollars.

In *People ex rel. Kelly* v. *Waldo* (161 App. Div. 731) a policeman was charged with having accepted money for making an inspection of a boiler at a particular time. The charge was sustained and the officer was dismissed from the force upon the uncorroborated testimony of one person, in spite of the absolute denial of the policeman. It was held that the decision should be annulled and the policeman reinstated.

In *People ex rel. Hussey* v. *Woods* (169 App. Div. 146; affd., 216 N. Y. 648) a manager of a hotel testified that he paid money to a patrolman to protect the hotelkeeper from police interference in the illegal sale of liquor. The patrolman testified that he received the money from the hotel manager and paid a portion of it to Inspector Hussey. Inspector Hussey denied that he ever received any money from the patrolman. It was stated in the opinion that the inspector was a man " without the stain of a known bad deed, and entitled to the merit that the law ascribes to such a person " and that he should be believed in preference to a man who had escaped prosecution for his admitted criminal act by testifying against his superior officer. The inspector was ordered reinstated.

These cases show that most courts hold even in a civil proceeding that a police officer who has performed his duties satisfactorily and who is held in high repute by his superiors and associates will not be held guilty of a crime upon the uncorroborated testimony of an individual.

Learman has also been convicted of the crime of extortion upon the testimony of the same complainant, Rogers. The indictment alleges that the defendant obtained from Rogers the sum of eighty dollars induced by fear and under color of official right by threatening to report certain facts to the Bureau of Motor Vehicles, thereby causing Rogers to fear that he would lose and have taken away from him his operator's license.

Extortion is defined as obtaining property from another, with his consent, induced by unlawful use of force or fear, or under color of official right. (Penal Law, § 850.) Section 851 of the Penal Law provides that " fear, such as will constitute extortion, may be induced by an oral or written threat: 1. To do an unlawful injury to the person or property of the individual threatened * * *." It is under this definition just quoted that it is claimed that Learman

is guilty of extortion. It is charged that the property threatened was the operator's license of Rogers. First, it is to be noticed that Rogers says that he was driving his car when the officers arrested him. As hereinbefore stated, the evidence shows that Rogers was intoxicated at the time of his arrest. Therefore, if Learman did report such facts to the Commissioner of Motor Vehicles he would not *unlawfully* injure Rogers' operator's license, as the evidence in this case is sufficient to convict Rogers of driving a motor vehicle while intoxicated, and such conviction would be sufficient cause for the revocation of his operator's license. (Vehicle and Traffic Law, § 71.) Furthermore, an operator's license is not property. (*People* v. *Rosenheimer*, 209 N. Y. 115.) In that case (at p. 121) the court said that " in operating a motor vehicle the operator exercises a privilege which might be denied him, and not a right, and that in a case of a privilege the Legislature may prescribe on what conditions it shall be exercised." The fact that an operator's license is not transferable or assignable shows that it is not property. The Legislature evidently intended to give a limited meaning to the word " property " as used in section 851 of the Penal Law. This is shown by the fact that in defining " oppression " (Penal Law, § 854) the Legislature has said that oppression is an unlawful official act whereby another person is injured in his person, property or rights. The addition of the word " rights," which is defined in the Century Dictionary as " privilege," shows that it was not intended that the word " property," contained in section 851 of the Penal Law, should include a " privilege."

Therefore, the facts pleaded in the count of the indictment charging extortion and the proof offered upon the trial are not sufficient to constitute the crime of extortion.

The defendant has also been convicted of the crime of oppression. The indictment alleges that the defendant willfully, unlawfully, maliciously and under the pretense and right of official authority obtained from Rogers the sum of eighty dollars by threatening to report to the Bureau of Motor Vehicles certain facts and circumstances concerning the said Rogers and by causing him to believe and understand that he thereby would lose and have taken away from him his operator's license. It is provided in section 854 of the Penal Law that a public officer who unlawfully arrests another, or detains him against his will, or seizes or levies upon another's property, or dispossesses another of any lands or tenements, or does any other act whereby another person is injured in his person, property or rights, is guilty of oppression. Oppression is an unlawful use of authority, and it is not committed by threats but by an unlawful act of the accused. The facts stated in the oppression

count of the indictment are a reiteration of the facts alleged in the extortion count and are not sufficient to constitute the crime of oppression.

The judgment of conviction should be reversed upon the law and the facts, and the first, fourth, fifth and sixth counts of the indictment should be dismissed.

All concur, except CROSBY, P. J., who dissents and votes for reversal and for a new trial on counts fifth and sixth.   Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, DOWLING and HARRIS, JJ.

Judgment of conviction reversed on the law and facts and first, fourth, fifth and sixth counts of the indictment dismissed.