The People of the State of New York, Plaintiff, *v.* I. James Brody et al., Defendants.

Supreme Court, Special Term, New York County, September 22, 1947.

*Frank S. Hogan*, District Attorney (*Vincent A. G. O'Connor* of counsel), for plaintiff.

*Samuel Bader* and *Hyman Barshay* for I. James Brody, defendant.

*Milton H. Spiero* and *Burton B. Turkus* for James V. Auditore, defendant.

BOTEIN, J. This is an application for a certificate of reasonable doubt.

The defendant Brody was a public officer, namely a deputy commissioner of the Department of Marine and Aviation of the City of New York. In its fifteen substantive counts the indictment charged that Brody, acting in consort with and aided and abetted by defendants Auditore and Gross, received various unlawful fees in violation of section 1826 of the Penal Law.

In another count the three defendants were charged with conspiring together to receive these unlawful fees on Brody's behalf.

Brody and Auditore stood trial. Gross, the third defendant named in the indictment, entered a plea of guilty to two counts shortly before trial and testified on behalf of the prosecution. Gross, a conceded accomplice, testified in brief that he financed the operation of two corporations controlled by himself and Auditore; that Brody, in his official capacity, assumed charge of the granting of permits for open wharfage piers — i.e., piers which were not rented for any fixed period of time — and made a practice of refusing to rent these piers to applicants; that Brody would then advise Auditore of the names of these applicants; that Auditore would then solicit the applicants for their pier business, secure in the agreement he and Gross had made with Brody that their companies would be granted permits.

The profits made in the subletting of these piers, that is, the difference between the rentals charged by the city to the companies controlled by Auditore and Gross, and the rentals in turn charged by them to the shippers, constituted the illegal fees charged in the indictment. They were shared equally, Gross testified, by Auditore, Gross and Brody. During the course of an extended trial, the People called a number of witnesses in corroboration of Gross. The jury found both defendants guilty on all sixteen counts.

All but one of the points urged by the defendants require little discussion. It seems to me that the corroboratory evidence was ample — particularly on the trial of an indictment in the bribery grouping of crimes. I believe the telephone conversations were properly admitted, since regardless of voice identification, there was sufficient testimony from which the jury could find that the shippers' messages were transmitted to Brody. The court charged carefully and adequately on the nature of the corroborative evidence and on the status of the witnesses as accomplices or nonaccomplices, and I am not impressed by the defendants' contentions on this score.

Since the chief and remaining argument of the defendants relates to the propriety of the convictions under the fifteen substantive counts, it follows that I am of the opinion that as to the conspiracy count, standing alone, the defendants have assigned no grounds for reversal which offer any substantial promise of success.

It will be recalled that in the fifteen substantive counts reciting the fifteen allegedly illegal transactions in violation of

section 1826 of the Penal Law, Brody, a public officer, was charged with criminally receiving certain sums of money, " acting in concert with and aided and abetted by Auditore and Gross." The sums of money alleged in the indictment were not the amounts representing one third of the illegal gains, which according to Gross were to be paid and were paid by him and Auditore to Brody. The sums recited in the indictment are the entire profits or the three thirds of the allegedly illicit gains realized by the three alleged conspirators — the profits purportedly made by the Auditore-Gross companies. Under the People's theory, as it relates to the point under discussion, the payment of the money by the shippers to the Auditore-Gross corporations consummated the crimes. The dates of the commission of each of the substantive crimes alleged in the indictment coincide with the dates of the respective payments by the shippers of the bills submitted to them by the Auditore-Gross corporations; not with the dates Auditore and Gross allegedly shared the proceeds with Brody. The bill of particulars furnished by the District Attorney identified the persons who paid the moneys as the shippers.

The trial judge followed the People's theory in charging the jury. I quote the relevant portion:

" It is apparent, therefore, that the People take the position that the crime of accepting an unlawful fee was consummated when the money was paid to Auditore's concern, whether such concern was National Navigation or United Nations, and not when part of it was, as they claim, paid to Brody as his share of the plunder. The theory upon which the People proceed is that the entire mechanism by which Auditore's concerns, National Navigation, Inc., and United Nations Steamship Company, Inc., received moneys from ship owners in return for providing them with wharfage space was simply a scheme for obtaining excessive fees from such ship owners.

" They contend that Brody associated himself with Auditore and Gross only because it would have been impossible, or inexpedient, for him to solicit fees directly from the ship owners. It, therefore, follows, according to the People's contention, that the entire overcharge paid by the ship owners constituted the illegal fee, that it was received by Auditore and his associate as agents for Brody, the only defendant claimed to be a public officer and the only one who had any control over the assignment of piers, and that the sums retained by Gross and Auditore, and others, constituted nothing more than necessary expenses of the illegal enterprise in which Brody was engaged."

The court cautioned the jurors forcefully, however, that a conviction could only be based upon the preliminary finding that Brody, Auditore and Gross were engaged in a criminal conspiracy.

The defendants assail this theory upon several grounds. First, they contend, as I understand it, that concededly the shippers who rented the piers from the Auditore-Gross companies had no corrupt dealings with Brody and had no knowledge of the alleged criminal conspiracy. The shippers were lawfully seeking the rental of a pier from a private person, since there was no legal prohibition at the time against a person subletting a pier and charging any sum he could obtain. The defendants therefore argue that upon the People's indictment and proof, the moneys paid by the shippers had no illegal taint — were not intended to be, and were not in fact, fees to a public officer.

The defendants argue also that the court committed error in charging that the fifteen substantive crimes of taking an unlawful fee were consummated when the money was paid to the Auditore-Gross companies. They contend that the receipt of such moneys, even if received wholly or partially on behalf of Brody, could not constitute a violation of section 1826 of the Penal Law. That section stamps as criminal any of the acts prohibited therein when committed by " A public officer, or a deputy, clerk, assistant or other subordinate of a public officer, or any person appointed or employed by or in the office of a public officer, who shall, in any manner act for or in behalf of any such officer  *  *  * ". The defendants argue that neither the Auditore-Gross companies, nor Auditore or Gross, fall within the specified class, and therefore payment to one or more of them could not consummate the crime. Perhaps another way of presenting this argument is to pose it as agreeing that if the shippers had paid these moneys directly to Brody, a public officer, then the codefendants, not public officers, could be guilty of the crime by acting in concert with him. But they argue that under the law the two nonofficeholder defendants were simply ineligible to take unlawful fees.

There is no dispute that an intermediary may make payment to a public officer, and that such payment would violate the section. It is the defendants' contention, however, that it is not the payment to the intermediaries, in this case Auditore and Gross or their companies, which constitutes a violation of the section; that is, unless the intermediary is himself a public officer or one of the other persons designated in section 1826.

The defendants further argue that the trial court's instructions that payment of the money by the shippers to the Auditore-Gross companies consummated the substantive crimes was tantamount to instructing the jury that if they found that the conspiracy was established by the evidence, then the defendants were necessarily guilty on all fifteen substantive counts. There was no dispute during the trial that the Auditore-Gross companies received the money from the shippers in each instance alleged in the indictment. The defendant Brody complains that under this instruction by the court it was the jury's duty to convict him on all substantive counts, whether or not he personally received any money, or whether he even knew of the payments to the Auditore-Gross companies, once the underlying conspiracy was established.

Section 1826 of the Penal Law, insofar as is here pertinent, provides as follows: " *Taking Unlawful Fees.*— A public officer or a deputy * * * who *asks* or *receives,* or *consents or agrees to receive* * * * any money * * * except such as may be authorized by law, for doing * * * any official act, or for performing * * * any act whatsoever directly or indirectly related to any matter in respect to which any duty or discretion is by or in pursuance of law imposed upon or vested in him, or may be exercised by him by virtue of his office * * * shall be guilty of a felony * * *." (Emphasis supplied.)

It should be noted that the People advisedly charged the defendants in the indictment with receiving unlawful fees; not with asking, consenting nor agreeing to receive unlawful fees, although the statute likewise characterizes such acts or conduct as felonious.

It was evident upon oral argument, and a reading of the minutes of the trial bulwarks this conclusion, that this was a theory of pleading and proof carefully and intelligently considered by the District Attorney in drawing the indictment, and adhered to scrupulously and skillfully at all subsequent stages of the prosecution. Upon the facts in possession of the District Attorney the indictment could have been bottomed upon other and different theories. Apparently there was no precedent of a prosecution in this State upon analogous facts; at least none has been suggested to me by prosecution or defense counsel. In setting the mold of his case by the theory upon which he drafted the indictment the District Attorney was hewing new frontiers in criminal law.

The People make no contention that the shippers were aware of Brody's alleged corruption. The District Attorney asserts that regardless of the concededly lawful manner in which the shippers acted in giving the moneys as rent to the Auditore-Gross companies, Brody corruptly received those moneys from the shippers through the medium of his coconspirators, in return for the granting to their companies of the permits for the use of the piers. As I understand the People's position, once they were welded together by the corrupt conspiracy the three conspirators became an indivisible entity for the attainment of the conspiracy's objective — the taking of unlawful fees by a public officer.

Viewed from this perspective, the pattern of the People's indictment and proof becomes lucid and integrated. The District Attorney does not contend that Brody, the public officer, received the unlawful fees *from* Auditore and Gross, but *with* and *through* them. It becomes apparent, therefore, why the indictment recites the amounts paid by the shippers to the Auditore-Gross companies as the unlawful fees received by the defendants and the dates of the payment by the shippers as the dates of the commission of the crimes.

In passing upon this application for a certificate of reasonable doubt, it is not my function, however, to decide whether I would have accepted the People's theory of the case and charged as did the learned trial judge. That would serve merely to substitute the opinion of a justice nisi prius for that of a judge nisi prius. Nor need I be satisfied that the judgment will be reversed. It is my function only to determine whether a " question of law is raised sufficient for the consideration of the appellate tribunal " (*People* v. *Nisonoff,* 181 Misc. 696, 700, and cases therein cited).

Such a question is in my opinion raised upon this application; a question which is not frivolous and which is of sufficient substance to warrant the serious consideration of an appellate tribunal. I am not unmindful of the creditable arguments advanced by the District Attorney and the defendants; but I am also greatly persuaded by the fact that there is presented here a new and novel question, in the resolution of which counsel are unable to submit either precedent or approximate analogy.

Accordingly, the application is granted. Bail will be fixed upon settlement of the order. Settle order.