THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* STELLA MARSHALL, Appellant, et al., Defendants.

Argued October 23, 1953; decided January 14, 1954.

*Sidney E. Friedman* and *Martin S. Friedman* for appellant. I. The failure of the trial court to advise the jury that the statement of the codefendant was not admissible as to defendant-appellant and was only binding upon the maker thereof and constituted no evidence of the guilt or innocence of defendant misled and confused the jury and constituted reversible error. (*People* v. *Vaccaro,* 288 N. Y. 170; *People* v. *Ryan,* 263 N. Y. 298; *People* v. *McQuade,* 110 N. Y. 284; *People* v. *Kief,* 126 N. Y. 661; *People* v. *Carborano,* 301 N. Y. 39; *People* v. *Robinson,* 273 N. Y. 438; *People* v. *Tassiello,* 300 N. Y. 425.) II. The trial court committed reversible error in denying defendant-appellant's motion for a mistrial and this error was emphasized and made even more prejudicial by the trial court's action, immediately prior to charging, in rereading to the jury the objectionable material and extracting from each individual juror a promise to disregard the admittedly prejudicial and incompetent material. (*People* v. *Mleczko,* 298 N. Y. 153; *People* v. *Marendi,* 213 N. Y. 600; *People* v. *Pignatoro,* 263 N. Y. 229; *People* v. *Sobieskoda,* 235 N. Y. 411.) III. The trial court committed reversible error when it by inference and innuendo placed the character of defendant in issue. (*People* v. *Manning,* 278 N. Y. 40; *People* v. *Zackowitz,* 254 N. Y. 192; *People* v. *Richardson,* 222 N. Y. 103; *People* v. *Forte,* 277 N. Y. 440.)

*George B. De Luca, District Attorney* (*John B. Lee* and *George Tilzer* of counsel), for respondent. I. The rulings of the court in no way prejudiced appellant. (*People* v. *Ryan,* 263 N. Y. 298; *People* v. *Storrs,* 207 N. Y. 147; *People* v. *Connolly,* 253 N. Y. 330; *People* v. *Miles,* 123 App. Div. 862, 192 N. Y. 541; *McCarney* v. *People of State of N. Y.,* 83 N. Y. 408; *People* v. *Arnstein,* 157 App. Div. 766; *People* v. *Mather,* 4 Wend. 229; *United States* v. *Johnson,* 26 F. 682; *People* v. *Guardino,*

286 N. Y. 132; *People* v. *Pacelli*, 251 N. Y. 66.) II. The trial court properly denied appellant's motion for a mistrial. (*People* v. *Feolo*, 282 N. Y. 276; *People* v. *Fisher*, 249 N. Y. 419; *People* v. *Leyra*, 304 N. Y. 468; *People* v. *Guardino*, 286 N. Y. 132; *People* v. *Pacelli*, 251 N. Y. 66.) III. No error was committed by the trial court in its charge with respect to appellant's failure to testify. (*People* v. *Russell*, 266 N. Y. 147; *People* v. *Johnson*, 185 N. Y. 219.)

LEWIS, Ch. J. The record which this appeal brings to us for review discloses incidents at the trial which we regard as so prejudicial to the defendant-appellant's rights as to require a reversal of the judgment of conviction and a new trial.

The two defendants stand convicted by a County Court jury of Bronx County upon an indictment which charged that "acting in concert with each other" they caused to be performed an abortion which was "unnecessary to preserve the life" of the woman aborted. The defendant Benjamin did not appeal from the judgment of conviction entered upon the jury's verdict.

Upon the trial, at which neither defendant took the witness stand, there was evidence that a pregnant woman was taken by a friend to the defendant Benjamin who, after accepting payment of a sum of money, took the young woman to the apartment of the appellant Marshall who there performed the abortion and received from Benjamin a part of the money which had been paid to her. There was also testimony from a detective that, in the course of the investigation to which he had been assigned, and while he was accompanied by the young woman upon whom the abortion had been performed, he interviewed the appellant who admitted that she knew the defendant Benjamin but denied that she knew the young woman and denied further that she had received money to perform an abortion upon her.

As part of the People's case, the District Attorney called a stenographer whose direct examination indicated that the prosecution was about to have read before the jury a statement by the defendant Benjamin previously made by her to the District Attorney. Thereupon counsel for the appellant interposed an objection on the ground that, having been taken in the absence of the appellant, the statement was hearsay, and that such

statement by the coconspirator Benjamin, made after the alleged conspiracy had come to an end, was not binding on the appellant. When that objection was denied with exception to the appellant, her counsel stated: "I further ask your Honor now to charge this jury that whatever statement was made by Mrs. Benjamin to the District Attorney is binding upon Mrs. Benjamin alone." In denying that request, with exception to the appellant, the court stated: "The Court will instruct the jury at the conclusion of the case as to the law applicable." We think the objection by counsel for the appellant to the receipt in evidence of the Benjamin statement was well taken, based as it was upon the following rule of evidence: "Declarations made by one conspirator in the prosecution of the enterprise are evidence against all, but they must be made in furtherance of the enterprise and while the enterprise is pending. Narration of past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others" (*People* v. *Ryan,* 263 N. Y. 298, 305; see, also, *People* v. *McQuade,* 110 N. Y. 284, 307; *People* v. *Kief,* 126 N. Y. 661, 662–663; *People* v. *Vaccaro,* 288 N. Y. 170, 172).

Not only was the statement by the defendant Benjamin erroneously received in evidence but its prejudicial effect upon substantial rights of the appellant was greatly enhanced when the jury heard read from the Benjamin statement the following questions and answers:

" ' Question: Have you brought other women up to Mrs. Marshall's? Answer: No.

" Question: This was the first time? Answer: Yes.

" Question: *How did you come to find out that she did this kind of thing?* Answer: *It was from somebody quite a while ago.*' " (Emphasis supplied.)

At that point in the examination there was an interruption by counsel and the following occurred:

" Mr. Friedman [defendant Marshall's attorney]: Just a moment.

" The Court: Sustained; strike it out.

" Mr. Friedman: I move at this time, if the Court pleases, for a mistrial on the ground that the statement read by this stenographer is prejudicial.

"The Court: Motion denied. The jury will disregard that last statement.

"Mr. Friedman: I respectfully except."

It thus appears that at a critical point in the trial a witness for the People read into the record within the jury's hearing a statement by the defendant Benjamin, a coconspirator, which statement, as to the appellant, was incompetent and inadmissible. In view of the implication which the jury might well have drawn from that statement — that the appellant had done "* * * * this kind of thing * * *" before — the jury, in compliance with the request made by counsel for the appellant, should have been instructed, contemporaneously with the receipt of the statement in evidence, that it was not competent evidence against the appellant. In the absence of such instructions at that critical time we cannot say that the implication mentioned above did not become indelibly impressed upon the minds of the fact-finders.

In our view the prejudice to the rights of the appellant resulting from the occurrence of that incident mid-trial, was aggravated later at the close of all the evidence when the record shows the following occurred:

"The Court: I wish to call the attention of the jury at the outset before I begin my charge to the fact that inadvertently during the reading of the statement of the defendant Charlotte Benjamin the following questions were asked: 'Have you brought other women up to Mrs. Marshall? No.

'This is the first time? Yes.

' How did you come to find out that she did this kind of thing? It was from somebody quite a while ago. I don't remember the name.

' And this is the only girl you brought up there? Yes.

' You are sure of that? That's right.'

" I ask the jury — I order this stricken from the record. I ask the jury to completely and absolutely disregard it. Let me have the jury roll, please. I ask you jurors will you disregard such testimony in this case, all the testimony in this case that has been ordered stricken from the record and not make it part of your deliberations."

The jury was then polled and each member gave an affirmative answer to the court's question.

We cannot say with assurance that any instructions were given the jurors that served to erase from their minds the excerpt from the Benjamin statement (quoted *supra*) which the court reread to them after the evidence was closed. As stated in the dissenting opinion in Appellate Division — " Reserving the instructions until after the evidence had sunk in and then asking the jury to excise it from consideration as to appellant was not psychologically the equivalent of the proper instruction at the proper time." (282 App. Div. 36, 42.)

We have recently had occasion to say: " The decision in each case as to whether the trial was fair or unfair, whether the error was harmless or prejudicial, must of necessity depend upon the nature of the proof adduced and upon the type of error committed " (*People* v. *Carborano,* 301 N. Y. 39, 43). In the circumstances disclosed by this record we conclude — paraphrasing language of this court — that the admonition to disregard evidence which had been stricken out was easy to give and hard to follow. (*People* v. *Robinson,* 273 N. Y. 438, 445–446; see, also, *People* v. *Posner,* 273 N. Y. 184, 190; *People* v. *Mleczko,* 298 N. Y. 153, 162; *People* v. *Tassiello,* 300 N. Y. 425, 430–431.)

The judgments should be reversed and a new trial ordered.

CONWAY, DESMOND, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

Judgments reversed, etc.