Bernard S. Meyer, J.
After conviction on three counts of an extortion indictment and sentence of Vincent Squillante to 7% to 15 years, Nunzio Squillante to 2 to 5 years, and Bernard Adelstein to 5 to 10 years, the defendants, having appealed, seek a certificate of reasonable doubt and the fixation of bail. Application granted as to all three defendants. Suggestions as to bail will be received with the proposed order to be entered on this decision, Avhich order may be settled on one day’s notice.
The inquiry AAdiich this court is required to make is not of the guilt or innocence of the defendants nor Avhether their convictions will be reversed on appeal, but simply whether ‘ ‘ in the opinion of said court there is reasonable doubt whether the judgment should stand”. (Code Crim. Pro., § 527.) In other words, the only problem before the court is whether any question of substance has been raised for consideration by the Appellate Division. (People v. Saperstein, 206 Misc. 482; People v. Brody, 190 Misc. 351; People v. Nisonoff, 181 Misc. 696.)
The crime Avith which these defendants are charged is extortion. The theory of the indictment is that they aided and abetted each other and one Nolan is obtaining from the stores named in the indictment sums of $20 or more per month by demanding under threat of picketing that the stores cease dealing with a nonunion eartman and deal instead with General Sanitation Service Corporation and other union eartmen, while in truth General Sanitation and other firms named by defendants were not union businesses. A number of errors are urged by defendants. It is necessary to consider only three.
First, defendants urge that the only money paid was for services rendered, the amount paid was the same as that paid *563 to the previous contractor, the services were, therefore, clearly worth the amount paid, and consequently no ‘ ‘ property ’ ’ was obtained from the stores within the meaning of section 850 of the Penal Law. The People contend, however, that money was paid by each of the stores in question and that it is immaterial that a quid pro quo was received for the money, citing People v. Fichtner (281 App. Div. 159, affd. 305 N. Y. 864). That case held it to be extortion to obtain money from an alleged shoplifter by threatening him with prosecution, even though the money received was equal to or less than the amount the shoplifter should have paid. Logically that holding may be extended to the instant case, and it was so extended in the charge to the jury. There is, however, a substantial question whether the charge will be upheld in view of the statutory protections which hedge labor’s right to picket. The FicMner case (supra) and the ‘ ‘ property ’ ’ elements of the crime cannot be considered separately from the element which requires that there be a ‘ ‘ wrongful use of force or fear ’ ’ by threat “ to do an unlawful injury ’ ’. As noted above, the theory of the indictment was that the picketing was wrongful and threatened an unlawful injury because General Sanitation and other listed firms though represented to be union were in fact nonunion. The charge was that if those firms were not union the picketing was not advancing unionism, that is, was not for a lawful purpose, but that if they were union the threat to picket could be bona fide. The jury may, therefore, have found defendants guilty on the theory that the firms were union but that the picketing was not in good faith, i.e., was for the illegal purpose of obtaining money. While People v. Hughes (137 N. Y. 29); People v. Barondess (133 N. Y. 649) and People v. Weinseimer (117 App. Div. 603, affd. 190 N. Y. 537), all establish that it is extortion to demand money under threat of a boycott, strike or other labor sanction, those cases all involved the payment of money in addition to that paid for the service involved. Where, as here, nothing is paid except for services, there would appear to be a substantial question whether the court should not have charged as requested that if the firms were union the threat to picket was lawful and if the payments were for services rendered defendants were not guilty. This was the theory on which the indictment was framed, and in view of the effect that a contrary holding would have on labor’s right to picket for a union shop, there is doubt whether the appellate courts will sustain the judgment on this point.
Apparently recognizing that there is some validity to defendant’s argument, the People reply that the stores lost the freedom to contract with the cartmen of their choices, and that that right *564 is " property ” within the section. While the ease was not tried on this theory, it will be considered. It would appear that the right to contract may be property injured under section 851 of the Penal Law (cf. People ex rel. Short v. Warden of City Prison, 145 App. Div. 861, affd. 206 N. Y. 632, with People v. Learman, 261 App. Div. 748), but it is difficult to consider that right property obtained under section 850. “ Obtaining of property from another imports not only that he give up something but that the obtainer receive something. At least no New Fork case to the contrary has been cited, and the two Federal cases cited by the People are distinguishable: Nick v. United States (122 F. 2d 660) because the statutory definition encompassed not only property but “ other valuable consideration ”, and United States v. Green (350 U. S. 415), because amendment of the statute after a prior holding made clear that the amendment was intended to reach the situation in question. It is apparent, therefore, that even on this theory a substantial question exists.
Second, defendants moved at the end of the People’s case and at the end of the whole case to dismiss the indictment on the ground that the proof was insufficient. The weight of the evidence, in any event, is one of the factors which section 527 of the Code of Criminal Procedure, leaves to the Appellate Division’s determination “ whether any exception shall have been taken or not, in the court below.” (See People v. Caverio, 1 N Y 2d 657; People v. Savage, 5 A D 2d 846.)
As the court charged, the entire case for the People was. circumstantial. It is well settled that the sufficiency of such evidence depends on whether the proof points logically to' defendant’s guilt and excludes to a moral certainty every other reasonable hypothesis, and that the facts from which the inferences are to be drawn must be established by direct proof: the inferences may not be based upon conjecture, supposition, suggestion, speculation or upon other inferences. (People v. Leyra, 1 N Y 2d 199; People v. Harris, 306 N. Y. 345; People v. Taddio, 292 N. Y. 488.) Circumstantial evidence is of no value if consistent with either the hypothesis of innocence or the hypothesis of guilt. It is not enough that the hypothesis of guilt will account for all the facts proven. (People v. Suffern, 267 N. Y. 115; People v. Razezicz, 206 N. Y. 249.)
In the instant case defendants are charged with extortion by aiding and abetting the threat to picket certain stores unless they changed from nonunion cartmen to General Sanitation Service Corporation or others said to be, but which in fact were not, union carting companies. It is not necessary to extend *565 this decision by a detailed analysis of the testimony. Suffice it to note that the evidence would not be sufficient unless it can be said with moral certainty that the only purpose it spells out is to benefit the defendants rather than the union. The testimony of Nolan and of each of the three store managers was that no suggestion was ever made concerning which cartman on the list proffered by Nolan was to be taken, that Nunzio Squillante though present did not speak until after General Sanitation had been selected, and that the sole reason for selecting General Sanitation was that it was first on the list. Recognizing the problem thus presented, the People introduced testimony intended to show a relationship between Vincent Squillante and most of the other companies on the list or to show that the remaining companies were not qualified to handle the business. Whether the evidence is of sufficient strength to bridge this gap in the chain of circumstances is a substantial question for the Appellate Division’s consideration.
Third, defendants object that evidence was introduced concerning events occurring after April, 1955 which related to conversations with or actions by some but not all of the defendants, as to which the court failed to give instructions limiting consideration of the evidence to the defendant involved. The instances referred to are detailed at S.M. pages 711-713. In some of the later instances instruction was given at the time the evidence was introduced, and the matter was also referred to in the charge. The People reply that no exception was taken to the charge and that in any event each of the defendants is bound by the acts of the others until the conspiracy between them ends and the conspiracy must be held to continue at least until arrest. The fact that no exception was taken to the charge at the end of the case will not prevent the appellate courts from considering whether it was not error to refuse to charge concerning the limited effect of the' evidence at the time it was introduced, as People v. Marshall (306 N. Y. 223) requires. The defendants did object and take exceptions as the testimony was introduced. Unless, therefore, it can be said that the conspiracy continued for the entire period during which the conversations or actions referred to occurred, evidence which constituted narration of past fact by one conspirator would be inadmissible against the others. (People v. Marshall, supra.) The case relied upon by the People, Krulewitch v. United States (336 U. S. 440), ruled that conspiracy could not be held to continue after arrest so as to make post arrest statements by one conspirator admissible against the others. That holding does not necessarily imply that a conspiracy will be held in every case to continue until *566 arrest no matter how long the time lapse between the event to which the conspiracy relates and the statement. Here the overt acts in furtherance of the conspiracy were the picketing in April, 1955 and, perhaps, the sale or merger of General Sanitation Service Corporation in September of that year. No later indication of the continuance of the conspiracy appears in the record. Some of the statements were made in 1957, nearly two years later. There is a substantial question whether more must not be shown than was shown in the instant case to indicate continuation of the conspiracy before declarations made by one conspirator can be admitted against all.
For the above reasons, the court is of the opinion that there is reasonable doubt whether the convictions here can stand on appeal.