THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* WILLIAM RUDOLPH, Respondent.

Argued April 11, 1951; decided July 11, 1951.

*Frank S. Hogan, District Attorney (Peyton H. Moss* and *Richard G. Denzer* of counsel), for appellant. I. The People presented sufficient proof as a matter of law to sustain defendant's conviction of the crimes of oppression and coercion. (*Langan* v. *First Trust & Deposit Co.,* 293 N. Y. 604; *People* v. *Pesky,* 254 N. Y. 373; *People* v. *McCarthy,* 250 N. Y. 358; *People* v. *Boas,* 92 N. Y. 560; *People* v. *Jackson,* 121 App. Div. 856, 191 N. Y. 293; *People* v. *Bellows,* 281 N. Y. 67; *People* v. *Phillips,* 42 N. Y. 200; *People* v. *Kaplan,* 262 N. Y. 507; *People* v. *Kaplan,* 240 App. Div. 72, 264 N. Y. 675; *People* v. *Thompson,* 97 N. Y. 313; *People* v. *Wickes,* 112 App. Div. 39; *People* v. *Sheridan,* 186 App. Div. 211; *People* v. *Weinseimer,* 117 App. Div. 603, 190 N. Y. 537; *People* v. *Greenwald,* 299 N. Y. 271.) II. The evidence of oppression was sufficient as a matter of law. (*People* v. *Kaplan,* 240 App. Div. 72, 264 N. Y. 675; *People* v. *Kaplan,* 262 N. Y. 507; *Dean* v. *Kochendorfer,* 237 N. Y. 384; *People* v. *Summers,* 40 Misc. 384; *State* v. *Barts,* 132 N. J. L. 74, 420.)

*James H. Tully, Truman H. Lurhman* and *Moses Polakoff* for respondent. I. The proofs of the People are insufficient as a matter of law to establish the crimes of either coercion or oppression. (*People* v. *Hüter,* 184 N. Y. 237; *People* v. *Barber,* 74 Hun 368.) II. The People failed to establish the commission of the crime of oppression under color of official authority by defendant. (*People* v. *Learman,* 261 App. Div. 748; *People ex rel. Devery* v. *Jerome,* 36 Misc. 256; *People* v. *Summers,* 40 Misc. 384; *People ex rel. Reardon* v. *Flynn,* 58 Misc. 621, 624; *Delaney* v. *Flood,* 183 N. Y. 323.)

LEWIS, J. The· defendant, William Rudolph, a police officer, was convicted in the Court of Special Sessions of the City of New York of the crimes of coercion (Penal Law, § 530) and oppression· (Penal Law, § 854). At the Appellate Division the judgment of conviction was reversed on the law and the facts, and the information was dismissed, two Justices dissenting. The case is here on appeal by the plaintiff by permission of a member of this court. (Code Crim. Pro., § 519, subd. 1; § 520, subd. 3.)

By the decision of the Appellate Division that court concluded that upon this record the proof was insufficient as a matter of law to sustain the charges of oppression and coercion. (277 App. Div. 195, 199.) Accordingly, we are obliged to review the evidence to ascertain whether it presented a substantial question for determination by the triers of the facts. (*People* v. *Bellows,* 281 N. Y. 67, 73–75; *People* v. *Scheinman,* 295 N. Y. 142, 144.) To that end direction for our inquiry is given by statutory definitions of the misdemeanors here involved, which we quote below from the Penal Law:

" § 530. COERCING ANOTHER PERSON A MISDEMEANOR. A person who with a view to compel another person to do or to abstain from doing an act which such other person has a legal right to do or to abstain from doing, wrongfully and unlawfully,

" 1. Uses violence or inflicts injury upon such other person or his family, or a member thereof, or upon his property or threatens such violence or injury; or

" 2. Deprives any such person of any tool, implement or clothing or hinders him in the use thereof; or

" 3. Uses or attempts the intimidation of such person by threats or force,

" Is guilty of a misdemeanor."

" § 854. OPPRESSION COMMITTED UNDER COLOR OF OFFICIAL RIGHT.* A public officer, or a person pretending to be such, who, unlawfully and maliciously, under pretense or color of official authority;

" 1. Arrests another, or detains him against his will; or,

" 2. Seizes or levies upon another's property; or,

---

* By L. 1945, ch. 486 the title " Extortion " was changed to " Oppression ".

" 3. Dispossesses another of any lands or tenements; or,

" 4. Does any other act, whereby another person is injured in his person, property, or rights,

" Commits oppression and is guilty of a misdemeanor."

As to evidence educed upon the trial: In the early morning hours of July 27, 1949, the defendant and a fellow officer, while patrolling Second Avenue, came upon an illegally parked motor truck in which they found the complainant, William Howell, asleep. When the officers laid hands upon him and roused him from his sleep he failed at the time to identify the intruders as police officers and stoutly resisted their efforts to remove him from his truck. A scuffle ensued and came to an end only when the complainant's resistance had been overcome. He was then arrested and taken to a police precinct station where he was charged with felonious assault.

There is testimony by the complainant that, although he had apologized to the defendant, he was beaten while at the precinct station. Several hours later, while in the custody of the defendant and a detective, he was fingerprinted and taken to Felony Court. Before reaching the court building and during conversation had with the defendant and the detective, the complainant was informed that he would be charged with felonious assault. He was also asked who would claim his truck which had been driven to the precinct station. When he replied that he would drive the truck away himself after leaving court, the complainant was told that he " wouldn't be leaving the court building because [he] was going to get time, maybe several months to a year ". Upon receiving that information the complainant renewed his apologies for what had occurred earlier in the morning and sought from his custodians advice as to how he should behave in court in order to avoid being sent to jail. The detective then asked whether he could "get fifty dollars " and was assured that the money would be supplied. The police car was then driven to a candy store where the defendant, the detective and the complainant went to a telephone booth from which the complainant called a woman who was asked by him to bring $60 or $70 to court. During this telephone conversation the defendant Rudolph kept his head inside the booth and spoke to the

woman telling her where to meet them at court, describing his own attire, and asking her what she would be wearing. When the three men returned to the car the detective outlined for the complainant the testimony which the defendant would give as a witness in court — " Officer Rudolph * * * was going to tell about he figured that it was a mistake in identity and some other little things like that ". Later, while the complainant was in the rear of the courtroom awaiting his arraignment, the defendant told him that the woman to whom they had talked on the telephone was already seated in court and that he would be unable to get the money from her. In response the complainant assured the defendant that " * * * if he [defendant] would go ahead and do what he had promised to do for me, that as soon as I could get away, that I would see that he got his money ". Upon Howell's arraignment he was charged with felonious assault. Then followed a court hearing during which the defendant, as a witness, referred to the case as one involving " a mistake in identity ". At the conclusion of the hearing the charge against the complainant was reduced from felonious assault to disorderly conduct to which the complainant pleaded guilty. Thereupon a fine of $10 was imposed which was paid by the complainant. Immediately thereafter the complainant met the defendant in the corridor outside the courtroom and asked him " Will $40 be enough, as I had to pay $10 to the court? " When the defendant answered " All right ", the complainant secured $40 from the woman to whom they had telephoned and paid that sum to the defendant in the presence of two persons who, as witnesses at the trial of the present case, testified to what they had seen and heard when the payment was made.

The evidence outlined above embraces testimony by the complainant which was corroborated by several witnesses as to points vital to the successful prosecution of the defendant for the crimes of oppression and coercion. In addition there is testimony by the defendant himself that, after the complainant had been " booked " at the police precinct station and charged with felonious assault and was being conveyed to Felony Court in the custody of the defendant and a detective, he was told " he would get a year in jail ". That unqualified statement addressed to the complainant in the defendant's presence — that the com-

plainant would be subjected to a substantial prison term — must be considered not only in the light of evidence that the defendant was present on the two occasions when the complainant was asked " can you get fifty dollars " and when he was told that if the money was forthcoming he " wouldn't be sent to jail ", but also in the light of evidence, already noted, that in eager co-operation with the complainant's efforts to procure $50, the defendant, as an intruder upon the complainant's telephone conversation with a woman benefactor, had made suggestions to her as to where the money should be delivered, and ultimately became the receiver of $40 from that benefaction, after the defendant, as a witness in Magistrate's Court had belittled the complainant's offense and the complainant had escaped a prison term.

In *People* v. *Bellows* (*supra,* p. 73) Chief Judge CRANE wrote — " It is a question of law whether, from any view of the testimony, there was a question of fact regarding the defendant's guilt which should have been submitted to the trial judge or to the jury and not disposed of by dismissal in the appellate court."

Applying that rule to the case at bar we conclude that the evidence of record, to which reference is made above, presents questions of fact which were properly submitted to the Court of Special Sessions for determination, viz., whether, in violation of subdivision 3 of section 530 of the Penal Law, the defendant used or attempted intimidation of the complainant by threats or force; and whether, in violation of subdivision 4 of section 854 of the Penal Law, the defendant as a public officer did any act whereby the complainant was injured in his person, property, or rights.

Accordingly, the order of the Appellate Division should be reversed, the information reinstated, and a new trial ordered.

CONWAY, J. (dissenting). The sole question presented for our consideration is whether the facts in this record establish the crimes of coercing another person and of oppression committed under color of official right as defined in sections 530 and 854 of the Penal Law and as charged in the informations upon which the defendant was tried in the Court of Special Sessions. In reaching our conclusion we disregard, of course, the character

of the complainant and the defense interposed by the defendant. We accept as the basis for our conclusion that there is no support in the record for conviction of the two crimes with which the defendant was charged, the following well-chosen words and fair statement in the opinion of Judge LEWIS of the facts leading up to the time when the complainant was charged with felonious assault in the Felony Court: "In the early morning hours of July 27, 1949, the defendant and a fellow police officer, while patrolling Second Avenue, came upon an illegally parked motor truck in which they found the complainant, William Howell, asleep. When the officers laid hands upon him and roused him from his sleep he failed at the time to identify the intruders as police officers and stoutly resisted their efforts to remove him from his truck. A scuffle ensued and came to an end only when the complainant's resistance had been overcome. He was then arrested and taken to a police precinct station where he was charged with felonious assault." We shall only add the further statement from Judge LEWIS' opinion reading: "Upon Howell's [the complainant] arraignment he was charged with felonious assault."

We now turn to section 530 of the Penal Law which provides, insofar as applicable, that:

" A person who with a view to compel another person to do or to abstain from doing an act which such other person has a legal right to do or to abstain from doing, wrongfully and unlawfully,   *  *  *

" 3. Uses or attempts the intimidation of such person by threats or force,

" Is guilty of a misdemeanor."

The information filed under that section charged that the defendant on July 27, 1949: " unlawfully and wrongfully did use and attempt the intimidation of the said William Howell by threats and force with a view to compel him, the said William Howell, to do an act which he, the said William Howell, had a legal right to abstain from doing, to wit, to compel him, the said William Howell, to pay and give him, the said defendant, the sum of $40.00 in United States currency."

In other words the defendant was charged with intimidating the complainant into giving to the defendant $40 in currency

as a bribe or as a payment for the commission of perjury by the defendant in changing his testimony so that it would be made to appear to the Magistrate that it was a case involving a question of mistaken identity rather than one of felonious assault. The complainant Howell not only as the information quaintly phrases it had " a legal right to abstain from doing " the act of paying and giving the defendant the sum of $40 in United States currency but the absolute duty as a citizen of abstaining from doing it since by its doing the complainant became a briber (Penal Law, § 371) and a suborner of perjury. That was not the crime of " Coercing another person " by the defendant as defined in section 530 of the Penal Law.

We now turn to section 854 of the Penal Law. Insofar as applicable here it reads as follows:

" OPPRESSION COMMITTED UNDER COLOR OF OFFICIAL RIGHT. A public officer, or a person pretending to be such, who, unlawfully and maliciously, under pretense or color of official authority:

" 1. Arrests another, or detains him against his will; or

\* \* \*

" 4. Does any other act, whereby another person is injured in his person, property, or rights,

" Commits oppression and is guilty of a misdemeanor ".

(By L. 1945, ch. 486, the title " Extortion " was changed to " Oppression ".)

The information, of course, did not charge a violation of subdivision 1 because it is not questioned that the complainant was lawfully arrested and charged with felonious assault.

The information charging the crime of oppression as just defined by section 854 charged that the defendant, a police officer, on July 27, 1949: " unlawfully and maliciously, under pretense and color of official authority, did an act whereby one William Howell was injured in his person, property and rights, to wit, defendant obtained $40.00 in United States currency from the said William Howell."

In other words it was there charged that the defendant, a police officer, unlawfully and maliciously under pretense or color of official authority injured the complainant in his *person, property* and *rights* by obtaining from him $40 in United States cur-

rency as a bribe or payment for the changing of his testimony and the commission by him of perjury. That is not and never was either extortion or oppression committed under color of official right.

According to the theory of the prosecution, therefore, it is necessary for it first to establish that the defendant as a police officer properly arrested the complainant, properly charged him with felonious assault and that, in his affidavit in the Magistrate's Court, the Felony Court, the defendant correctly made affidavit as to the facts as to the felonious assault. The affidavit in the Felony Court is before us as an exhibit. Establishing those facts to the satisfaction of a court or jury beyond a reasonable doubt makes clear that in the arrest and charging of the crime of felonious assault against Howell there was neither coercion nor oppression. With these indisputable facts as a foundation, the People have urged upon the Appellate Division and upon us that the subsequent acceptance of $40 by the defendant for the changing of his testimony so as to have the charge against Howell reduced to disorderly conduct (to which Howell pleaded guilty) constitutes coercion and oppression. Such acts by the defendant, assuming the truth of the testimony against him, quite clearly constitute the crime of bribery (Penal Law, §§ 372, 379), or of taking an unlawful fee (Penal Law, § 1826) or of perjury, but not of coercion or oppression. Such acts, indeed, were the antithesis of coercion or oppression.

There are no common-law crimes in this State but only those denominated such by the Legislature. The Legislature has provided under chapter headings in the Penal Law various categories of crimes. It is clear, it seems to us, from the chapter headings and the sections with their respective headings, the acts which the Legislature intended to make crimes under appropriate circumstances. The Penal Law and its predecessor, the Penal Code, are more than a century old and until now, no prosecutor has charged the acts here set forth — following, as they do, a proper arrest and a proper charge of crime both in the police station house and the Magistrate's Court — to be either coercion, extortion or oppression. In our judgment we should not so construe sections 530 and 854 of the Penal Law as

to permit it at this late date when the statutes have been practically construed by prosecuting officers to the contrary for so long a period.

The order of the Appellate Division should be affirmed.

LOUGHRAN, Ch. J., DESMOND and DYE, JJ., concur with LEWIS, J.; CONWAY, J., dissents in opinion in which FULD and FROESSEL, JJ., concur.

Order reversed, etc.