**GOVERNMENT OF the VIRGIN ISLANDS,**

v.

**Kelvin DERRICKS, Appellant.**

No. 85–3089.

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1986.

Decided Jan. 21, 1987.

James W. Diehm, U.S. Atty., Jim U. Oliver, Jr., Asst. U.S. Atty., Roland Jarvis (argued), Asst. U.S. Atty., District of the Virgin Islands Christiansted, St. Croix, U.S. V.I., for appellee.

Thomas J. Michael (argued), Pittsburgh, Pa., for appellant.

Before SLOVITER, STAPLETON, and ROSENN, Circuit Judges.

SLOVITER, Circuit Judge.

## I.

Kelvin Derricks, who was a St. Thomas police officer at the time of the events in question, appeals from his conviction of one count of official oppression under 14 V.I.C. § 703. The charge arose out of the complaint of Marilyn Stires that Derricks threatened her with arrest, jail, a fine and inability to work again if she did not engage in sexual activities with him. Derricks, who admitted that he had engaged in sex with Stires after she had been picked up by the police who believed she had been smoking marijuana, claims that the government's evidence was factually and legally insufficient to make out a case of oppression.

## II.

Although there were different factual scenarios presented, the following facts are generally agreed upon. Derricks, who was not in the street crime unit, volunteered to ride with his friends, Officers Charleswell and Matthews, on August 31, 1981. In the early morning of September 1, 1984, they noticed Marilyn Stires sitting in a car parked outside a restaurant. Charleswell suspected that Stires was smoking a marijuana cigarette. Derricks, who was not in uniform, approached the car, showed his badge, and ordered Stires out of the car. The other officers searched the car but did not find the marijuana cigarette. Derricks then searched the car and, while Stires could not observe his movements, found a plastic bag filled with marijuana. Stires denied that the marijuana belonged to her.

All three officers testified that Charleswell, who was in charge, decided that there was not sufficient evidence to arrest Stires; instead, Stires was to be taken to the station house where a "contact card" would be filled out. Derricks rode to the station with Stires in her car. According to Stires' testimony, Derricks, both during the ride

and at the station where he began filling out what he said was an arrest form, told her that she was going to jail for eight or ten years and that she would have to pay a twenty-five thousand dollar fine, told her that she would never work again, and asked her if she had a boyfriend and if she "liked to go to bed."

Although Stires was never placed under arrest, she believed she was and testified that she did not feel free to leave the police station and that Derricks would not allow her to call her lawyer. Derricks continued to make sexual references, told Stires that if she "said the right things" she could "get out of this", and also said that the last "white blond I did this to, did fellatio." App. at 30.

After forty-five minutes in the police station, Derricks rolled the supposed arrest report into a ball, placed it in Stires' pocketbook, and told her that she was going to be friendly and that he was going to forget about the whole thing. Derricks then told her that they were going to take a drive and that if her friend who was waiting for her at the police station did anything to interfere, she was going to jail.

According to Stires, Derricks then drove her from the station in an unmarked police car, stopped the car, kissed her and fondled her sexually, and then drove her to his apartment. There, after she used the bathroom, she found Derricks lying nude on the bed flipping a small gun back and forth between his hands. She testified that she did not feel free to leave. Derricks directed her to lie down, undressed her, and had sexual intercourse with her. Derricks gave a markedly different story than did Stires, testifying that it was Stires who had initiated the sexual encounter and that he displayed no gun.

Derricks was charged with one count each of kidnapping, kidnapping for ransom, solicitation of an emolument, gratuity, or reward for doing an official act, and official oppression. The kidnapping charges were dismissed by the court during the trial, and the solicitation count was dismissed after the jury was unable to reach a verdict. Derricks was convicted by the jury on the official oppression charge.

### III.

The Virgin Islands statute proscribing official oppression, 14 V.I.C. § 703, provides in relevant part:

> Whoever, being a public officer, or person pretending to be a public officer, and under the pretense or color of any process or other legal authority—
>
> (1) arrests any person or detains him against his will;
>
> .    .    .    .    .
>
> (4) does any other act, whereby another person is injured in his person, property or rights—
>
> without regular process or other lawful authority therefor, commits oppression and shall be fined not more than $200 or imprisoned not more than 1 year, or both.

Section 703 was patterned almost verbatim after New York Penal Law § 854 (amended and recodified 1965, current version at New York Penal Law § 195.00 (McKinney 1975)). *See* Revision Note to 14 V.I.C. § 703. In enacting this statute, the Virgin Islands legislature used broad language, enlarging upon the earlier provision penalizing certain abuses of authority by public officers.[1]

There is not much case law extant on the scope of oppression statutes, and of course, the cases will be governed by the language of the applicable statute. The only case that we have found where a police officer was convicted for oppression for detaining and driving around an arrestee to pressure and persuade her to engage in sexual intercourse with him, *Emerson v. State*, 662

---

**1.** Subsection (4) encompasses the provisions of Title IV, Ch. 4, § 29 of the 1921 Codes which provided:

> Every public officer who, under color of authority, without lawful necessity, assaults, wrongs, oppresses or beats any person is punishable by fine not exceeding five hundred dollars, or imprisonment in jail not exceeding one year, or by both.

*See* Revision Note to 14 V.I.C. § 703.

S.W.2d 92 (Tex.Ct.App.1983), arose under a Texas statute framed in language different than 14 V.I.C. § 703, and hence is not helpful to our inquiry.

We have found only one reported Virgin Islands case interpreting section 703, and that arose in a different factual context, where police officers used unnecessary force in arresting a traffic violator. *See Government of the Virgin Islands v. Lenhardt,* 7 V.I. 406 (1969). However, it is instructive that the Municipal Judge in that case stated, "Oppression can be defined as the exercise of authority or power in a burdensome, cruel or unjust manner." *Id.* at 407.

■ Derricks argues that the facts, even if Stires' story were true, do not constitute official oppression. However, the facts fit precisely into the language of the statute.

Derricks was "a public officer" and acted "under color of ... legal authority" since he rode with other officers, showed a badge, accompanied Stires to the police station, and took information from her in the roll call room at the direction of the officer in charge. Even if he did not arrest her, as she believed, she claimed that he detained her against her will at the station, on the subsequent drive, and in his apartment by his actions, his show of authority, and his display of a gun. That makes out a violation of subsection (1). Similarly, Derricks' unwelcome sexual contact, as well as the detention of Stires, both of which were effected by his show of legal authority and his display of a gun, constituted an "act" whereby Stires was injured in her person, within the meaning of subsection (4).

Derricks makes a number of arguments why these facts do not constitute oppression, but we find none of them persuasive. Derricks argues first that the mere threat of arrest and subsequent imprisonment do not constitute oppression. He relies on *People v. Learman,* 261 A.D. 748, 28 N.Y. S.2d 360 (1941), where the New York Supreme Court, Appellate Division, stated that "[o]ppression is an unlawful use of authority and it is not committed by threats but by an unlawful act of the accused." *Id.* at 753, 28 N.Y.S.2d at 365. In *Learman,* the court held that a police officer who obtained $80 from a criminal defendant by threatening to report certain facts to the Bureau of Motor Vehicles and causing him to believe that his driver's license would thereby be revoked, was not guilty of oppression under New York Penal Law § 854. Even if the *Learman* decision were the applicable precedent, we question whether it would have the effect Derricks ascribes to it since the dispositive holding was that a driver's license is not "property" for purposes of official oppression under a statute which required injury to another in "his person, property, or rights." *Id.*

Moreover, the restrictive interpretation given the oppression statute by the Appellate Division in *Learman* is not the governing New York precedent. It is a settled rule of statutory construction in the Virgin Islands to construe the statute according to the meaning given by the *highest court* of the jurisdiction from which it was taken. *See Berkeley v. West Indies Enterprises, Inc.,* 480 F.2d 1088, 1092 (3d Cir.1973).

Several years after *Learman,* and before the New York statute was amended,[2] the New York Court of Appeals, that state's highest court, rejected another limited construction given to section 854 by the Appellate Division. In *People v. Rudolph,* 303 N.Y. 73, 100 N.E.2d 142 (1951), the Court of Appeals was confronted with the following factual situation. Rudolph, a police officer, arrested Howell, who had been sleeping in an illegally parked truck, for felonious assault arising out of an alterca-

---

**2.** Section 854 of the New York Penal Law was revised in 1965 to incorporate in one offense approximately thirty provisions in the former Penal Law which dealt with offenses of malfeasance and nonfeasance, by public servants. *See* N.Y. Penal Law § 195.00 (McKinney 1975) and Practice Commentary thereto.

Although the statute, as amended, specifically included "acts of omission" within oppression, a change that Derricks emphasizes, the statute at the time of the *Rudolph* decision was in the same form as 14 V.I.C. § 703.

**54**

tion at the time of the arrest. Rudolph told Howell he would have to serve several months to a year in jail. When Howell asked how he could avoid jail, Rudolph agreed for a sum of money to change his testimony. The Appellate Division, consistent with its earlier interpretation in *Learman*, held that the crime of oppression was not established under these facts. It held that oppression was limited to an act within the scope of the officer's official authority, which it concluded did not extend to coloring his testimony in behalf of a prisoner in consideration of the payment of money. *People v. Rudolph*, 277 A.D. 195, 197–98, 98 N.Y.S.2d 446, 448–49 (1950).

■ The Court of Appeals reversed. Unlike the Appellate Division, it held that a police officer who used his authority to extract money from a criminal suspect was properly charged under section 854. 303 N.Y. at 79, 100 N.E.2d at 144. The cases are analogous. In *Rudolph*, the police officer extracted money by threat of a prison sentence. Derricks extracted sex. There is no reason why the statute should not cover both.

Derricks also argues that there was no "act" within the meaning of subsection (4) of § 703. Derricks gives an unintelligible construction to the word "act". He argues that the only oppressive "act" he could have committed was "crumpling the report and not charging her" and that he "at most threatened her with prosecution for a crime she probably did commit." Brief for Appellant at 28. He argues that, at most, he is responsible for an act of "omission," by which he apparently refers to the failure to charge Stires. We see no reason not to give the word "act" its common meaning.

■ Stires testified, and the jury believed, that Derricks detained her, used threats of prosecution and a consequent prison term and substantial fines, and displayed a gun to coerce Stires into having sexual intercourse with him. This conduct constitutes an "act" "whereby [the suspect] is injured in [her] person, property or rights." 14 V.I.C. § 703(4).

Our interpretation of § 703(4) to apply to the type of offense with which Derricks was charged is supported by the legislative history of the oppression statute. The Revision Note to § 703 states "[s]ubdivision (4) ... was inserted to cover *all other means and methods* by which persons acting under color of authority may oppress others...." Revision Note to 14 V.I.C. § 703 (emphasis added). In light of this broad statement of legislative intent, and the unambiguous statutory language, we find no basis to apply the limited interpretation of the statute which Derricks proposes.

Having rejected Derricks' legal interpretation of the oppression statute, we turn to his challenge to the sufficiency of the evidence. We consider whether, when viewed in the light most favorable to the government, the evidence supports Derricks' conviction. *See Government of the Virgin Islands v. Soto*, 718 F.2d 72, 73 (3d Cir. 1983).

■ The evidence supporting Derricks' conviction under subsection (1) consists of Stires' testimony that Derricks told her repeatedly that she was under arrest and that she did not believe that she was free to leave the police station or Derricks' apartment. Derricks argues that he could not have been convicted under section 703(1) because marijuana was found in Stires' car and thus her arrest was lawful. Each of the officers, including Derricks, testified that Stires was not placed under arrest for marijuana possession. Thus, the issue is not whether the initial stop of Stires was lawful, but whether Derricks violated section 703(1) by leading Stires to believe that she was under arrest and that she was not free to leave either the police station or Derricks' apartment. Derricks' behavior fit within the conduct proscribed by section 703(1) and there was substantial evidence, viewed in the light most favorable to the government, to conclude that Derricks held Stires "against her will," "without regular process or lawful authority," and "under the pretense or color of any process or other legal authority."

■ With respect to subsection (4), Stires testified that Derricks told her that

she would go to jail for eight to ten years, that she would incur a large fine, and that she would not be able to work again. Derricks led her to believe that she would not be arrested if she engaged in sexual activities with him. Derricks argues that Stires could not reasonably have believed she had to submit to his sexual demand. We reject the cynical argument that a police officer armed with apparent authority to detain, arrest, and process a suspect through the criminal system will not be responsible for his misconduct because his demands should have been known to be unreasonable. Stires testified that she felt compelled to have sexual intercourse with Derricks and the jury believed her. Viewed in the light most favorable to the government, this evidence is sufficient to support Derricks' conviction under section 703(4).

Derricks also argues that the district court acted improperly by denying his motion for acquittal and submitting the case to the jury. In light of the substantial evidence supporting Derricks' conviction and the correct application of 14 V.I.C. § 703(1), (4) to Derricks' actions, the case was properly submitted to the jury.

Derricks contends as well that the jury's verdict is not supported by the weight of the evidence and that this court should sit as a "thirteenth juror" and independently evaluate the weight of the evidence. *See Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982). Motions for a new trial based on the weight of the evidence are not favored. *See United States v. Martinez,* 763 F.2d 1297, 1313 (11th Cir.1985). Such motions are to be granted sparingly and only in exceptional cases. *Id.; United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir.1979). We see no reason for this court to overturn the jury's verdict in this case. The jury was entitled to credit Stires, a former

nurse, who was in the car by the restaurant because she occasionally worked there as a waitress and had stopped that night to see if they needed extra help. Although Derricks' testimony conflicted with Stires' testimony in many material respects, Stires' testimony was not incredible and it was corroborated where possible by the testimony of her friend who waited for her at the police station. The contradictory testimony between Stires and Derricks was a matter for resolution by the jury. This is not an "exceptional case" warranting reversal of the jury verdict by an appellate court on the basis of the weight of the evidence.[3]

## IV.

For the reasons set forth above, we will affirm the district court's judgment of conviction.

---

**3.** Because we have concluded that the evidence was sufficient to convict Derricks under both sections 703(1) and 703(4), we do not reach Derricks' argument that his conviction must be reversed because the information charged him with violating sections 703(1) and 703(4) in the conjunctive and it is not certain on which charge the jury convicted him. We note, however, that as a rule when a party is charged with several acts in the conjunctive, guilt may be established by proof of any one of the acts charged. *Turner v. United States,* 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970); *United States v. Niederberger,* 580 F.2d 63, 67–68 (3d Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978).