OPINION
PER CURIAM.
Appellant Gwendolyn Jackson appeals her conviction and sentence for harassment. For the reasons stated below, we affirm.[1]
I.
In 2004, Jackson, at the time serving as a judge advocate in the New Jersey Army National Guard, received a negative evaluation from a superior officer, Lieutenant Colonel Mark Winkler. In November 2006, she asked Winkler to retract the evaluation, but he denied the request.
In the morning of December 2, 2006, Winkler received a call in his office area at Fort Dix from Jackson’s cellular telephone number. The caller refused to give a name, but stated, ‘You know who this is. You gave me ... a shitty OER.”[2] Throughout the day, until late afternoon, 47 more calls were made to Winkler’s office from Jackson’s number. Two other judge advocates on duty at the time became involved: Winkler enlisted Robert Stevens to answer most of the calls using speakerphone, and Mark Tarantino overheard many of them. Most of the calls consisted of loud recorded music or sirens, silence, and hang-ups. On some calls the caller (using a muffled voice) made statements such as “where’s the snake,” “put Winkler on the phone,” and “put his ass on the phone.” During a late morning call, the caller stated, “Tell him to come out for lunch. We’ll see him at lunch.”
Jackson was charged with the petty disorderly persons offense of harassment, in violation of N.J. Stat. Ann. § 2C:33-4a,[3] as assimilated into federal law by 18 U.S.C. § 13. Before trial, her motion for a change of venue and to disqualify the Special Assistant U.S. Attorney were denied. During a two-day bench trial conducted before a Magistrate Judge, Winkler and Tarantino testified that they could recognize Jackson’s voice as the voice on the calls. Stevens, however, could not identify her voice based on, he testified, his few prior encounters with her. Winkler had recorded some of the calls with a handheld tape recorder; this tape was played at trial.
Winkler testified that, when the calls began, he was not overly concerned. However, as they continued, he became worried for his family’s safety, especially because he believed Jackson lived near his *779 home. He called his wife around noon, warning her to look out for Jackson and asking her to inform their son of the situation. Around the same time, he called the police.
Jackson was found guilty and sentenced to two years’ probation and a $500 fine. She appealed her conviction and sentence to the District Court, who affirmed on all grounds relevant to this appeal. Jackson timely appealed to our Court.
II.
Jackson first challenges the sufficiency of the evidence, and the Magistrate Judge’s denial of a new trial on that ground. We review the sufficiency of the Government’s evidence to determine if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” United States v. Dent, 149 F.3d 180, 187 (3d Cir.1998) (internal quotation marks and citations omitted). “It is not for us to weigh the evidence or to determine the credibility of the witnesses.” Id. (internal quotation marks and citation omitted). We review the denial of a motion for a new trial pursuant to Rule 33 for abuse of discretion. United States v. Jasin, 280 F.3d 355, 360 (3d Cir.2002). Such motions should be “granted sparingly and only in exceptional cases.” Gov’t of Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir.1987).
Jackson argues that the identification of her voice by Tarantino and Winkler was suspect because they had not been in communication with her recently, the audio quality was poor, and the speaker was muffling his or her voice. She also argues that a statement by James Sattley, a judge advocate in her unit, creates reasonable doubt as to whether she made the calls. Sattley placed Jackson at Fort Dix the afternoon of the calls, while the telephone records show that calls from her cell phone number that afternoon were routed through servers.in the New York metropolitan area. She further argues that the Magistrate Judge accorded too little weight to the testimony of Investigator Matthew Bloomberg, who at trial relayed Jackson’s statement to him that Jackson’s family often switched the Subscriber Identity Module (“SIM”) cards (which store the subscriber’s identification data, including the phone number) in their cell phones. Jackson argues that Bloomberg’s testimony creates a reasonable doubt as to whether it was Jackson (or instead, we presume, one of her family members) who placed the calls.
Despite Jackson’s objections, the evidence appears more than sufficient to support her conviction. There is no dispute that the phone calls were placed from Jackson’s cell phone number, and two witnesses testified that they recognized Jackson’s voice on the calls, despite her attempts to disguise it. A month before the calls, Jackson had requested that Winkler retract his negative evaluation of her, and the caller stated to Winkler that he had given her “a shitty OER.” As to the phone calls routed through the New York metropolitan area, this evidence does not show that these calls were actually placed from that area, but only that they were routed through those servers. There was no evidence at trial that, on the day of the calls, Jackson in fact had swapped SIM cards with any family member. Based on this record, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, the Magistrate Judge did not abuse his discretion in denying Jackson’s motion for a new trial.
III.
Jackson challenges the sufficiency of the evidence on another ground. Under N.J. Stat. Ann. § 2C:33-4a, the following elements must be shown:
*780 (1) defendant made or caused to be made a communication; (2) defendant’s purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.
State v. Hoffman, 149 N.J. 564, 695 A.2d 236, 242 (1997). Jackson argues that her conduct did not satisfy the requirement that the communication was made in a manner “likely to cause annoyance or alarm.” She emphasizes that 1) only one or two of the calls were answered by Winkler himself, and 2) he was not alarmed by the first calls but only became concerned as the calls continued.
However, Winkler was alarmed enough to call his wife and the police. See State v. Reyes, 172 N.J. 154, 796 A.2d 879, 885 (2002) (concluding that communications were “likely to cause annoyance or alarm” when they led to the “summoning of the police” and a temporary restraining order). Moreover, as the District Court recognized, the nature, content, and sheer number of the calls, all directed at Winkler, constituted sufficient evidence to support the conviction.
IV.
Jackson next challenges the Magistrate Judge’s denial of her motion for a change of venue and for disqualification of the prosecutor. Neither argument is persuasive.
Motions for change of venue in federal court are governed by Federal Rule of Criminal Procedure 21(a), which provides:
The court upon motion of the defendant shall transfer the proceeding as to that defendant to another district whether or not such district is specified in the defendant’s motion if the court is satisfied that there exists in the district where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial at any place fixed by law for holding court in that district.
Fed.R.Crim.P. 21(a). Jackson did not allege, let alone show, that there existed in the District of New Jersey “so great a prejudice” against her that she could not “obtain a fair and impartial trial.” Id. Therefore, a transfer of venue would have been inappropriate.[4]
Jackson’s motion to disqualify the prosecutor similarly fails. She bases her argument on the “risk of undue influence by the victim, the quasi-military/quasi-eivilian nature of the prosecution, and the appearance of impropriety and bias.” But the evidence shows that the prosecutor was not connected to Jackson, the witnesses, or Winkler, was not part of the same military organization as Winkler, and was not subject to Winkler’s command. We agree with the Magistrate Judge that there was “no evidence of any influence through the chain of command,” and we know of no evidence supporting the allegation that the prosecutor was biased or influenced by Winkler.[5]
*781 V.
Finally, Jackson challenges her sentence of two years’ probation, including the requirement that she participate in a mental health treatment program, as substantively unreasonable. The Government has moved for dismissal of this issue because Jackson’s period of probation was revoked and terminated after the filing of this appeal when Jackson violated the terms of her probation.[6] See United States v. Jackson, 523 F.3d 234, 241 (3d Cir.2008) (“A defendant who is no longer serving a term of imprisonment, parole, probation, or supervised release and challenges only his sentence will have his appeal dismissed for lack of jurisdiction unless he can somehow show sufficient collateral consequences....”). Jackson filed no response, and thus has not alleged any collateral consequences. As the mental health condition was a requirement of the terminated sentence of probation, her appeal as to that condition is also moot. Therefore, we grant the Government’s motion.[7]
For the reasons stated above, we affirm Jackson’s conviction, and dismiss the appeal of her sentence.

. The Magistrate Judge had jurisdiction under 18 U.S.C. § 3401 and 28 U.S.C. § 636. The District Court had appellate jurisdiction under 18 U.S.C. §§ 3402 and 3742(h). We have jurisdiction to review the District Court's order affirming the Magistrate Court’s judgment pursuant to 28 U.S.C. § 1291.

. An "OER” is an “Officer Efficiency Report,” a form used to evaluate personnel.

.Under N.J. Stat. Ann. § 2C:33-4a, it is a petty disorderly persons offense if any person, “with purpose to harass another, ... [mjakes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm.” Id.

. To the extent Jackson sought, through her motion to transfer venue, to allege on the part of the Magistrate Judge any personal bias, prejudice, or knowledge of those involved in the case, we see nothing in the record to support those allegations.

. Jackson surmises that the Government did not consider her for a diversionary program or a continuance in anticipation of dismissal because Winkler improperly influenced the prosecutor. Not only is there no evidence this occurred, these decisions are entrusted to the discretion of the United States Attorney, and a defendant has no right to be placed in pretrial diversion.

. The merits of the parole revocation are not before us in this appeal.

. We note that even if we reached the merits of Jackson's appeal of her sentence, we would affirm. Jackson contends her sentence of two years' probation was substantively unreasonable in light of her military record, her lack of criminal history or history of similar behavior, the sufficiency of a no-contact order to protect Winkler, and the nature of the offense. However, under the totality of the circumstances, Jackson’s sentence "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors.” United States v. Wise, 515 F.3d 207, 218 (3d Cir.2008). As to the mental health treatment requirement, the Magistrate Judge stated that he was concerned "as to what, if anything is pr[e]ying on the mind of this Defendant which led to this behavior, real or imagined,” and that he wished to ensure Jackson received the appropriate medical care. The requirement appears to result from a genuine concern for Jackson's welfare and long-term health.