NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3805
_____

UNITED STATES OF AMERICA

v.

ANTHONY J. MUNCHAK,
a/k/a A. J. Munchak

Amthony J. Munchak,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-10-cr-00075-002)
District Judge:  Honorable A. Richard Caputo

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2015

BEFORE:  VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

(Filed April 26, 2016)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

NYGAARD, *Circuit Judge.*

Anthony Munchak appeals the District Court's order denying him a new trial pursuant to Fed. R. Crim P. 33. He asserts that the District Court made numerous errors by rejecting his motion premised on a claim of newly discovered evidence. We will affirm the District Court's judgment of conviction and sentence.

This opinion does not have any precedential value. Therefore our discussion of the case is limited to covering only what is necessary to explain our decision to the parties.

In 2005, Munchak, a Commissioner for Lackawana County, Pennsylvania, joined a fellow commissioner in demanding payments of monies from Highland Associates, an architectural and engineering firm that was doing work for the County. The partners of Highland—Don Kalina, Dom Provini, and Kevin Smith—agreed to pay the demand of $30,000—each contributing $10,000—as well as two additional demands of the same amount over the next six months.

The Government conducted an investigation and indicted Munchak and a fellow Commissioner on numerous charges arising from Highland's payments to the Commissioners. A jury convicted Munchak on June 21, 2011, of conspiracy to commit theft or bribery concerning programs receiving federal funds (18 U.S.C. § 371); two counts of theft or bribery concerning programs receiving federal funds (18 U.S.C. § 666(a)(1)(B)); conspiracy to commit extortion under color of right (18 U.S.C. § 1951(a)); two counts of extortion under color of right (18 U.S.C. § 1951(a)); filing a false tax return

(26 U.S.C. § 7206(1)); and, attempted income tax evasion (26 U.S.C. § 7201). The District Court sentenced Munchak to 84 months of imprisonment.[1]

In January 2014, Munchak filed a Rule 33 motion for new trial, on the basis of newly discovered evidence that, he says, proves Smith, Provini and Kalina lied about the amount the County owed Highland.[2] At Munchak's trial, the partners were questioned about why they paid the extortion rather than report it to the authorities. Smith said they feared any such report would become "our word against their word," putting their work with the county in jeopardy. J.A. 97. He said that,

> [I]t was kind of an interesting time for the request to come, and I think at that time I think we were owed 1.3 million dollars fees. We had probably 40 percent of the people in the Clarks Summit office were working on county contracts that were cancelable at any time.

J.A. 95. He went on to say that, with their large payroll and overhead, they felt particularly vulnerable to negative cash flow consequences if the County began to slow its payments, or cancel the contract. After the third payment, Smith noted that they were "heading down on some of these contracts, but we were still –we had a lot of money out there." J.A. 103.

Provini was also questioned about their decision to pay money to the Commissioners. He said:

---

[1] We affirmed the conviction on appeal. *United States v. Munchak*, 527 Fed. App'x. 191 (3d Cir. 2013).

[2] The District Court convicted a co-defendant, Robert Cardaro, and we affirmed it. He joined Munchak in the filing of the Rule 33 motion and appeal of the District Court's decision, but he withdrew his appeal.

3

> A. "We reviewed alternatives. I happen to have the financials on my desk. I pretty much knew what the oldest, which was 1.2 or 1.3 million dollars.
> Q. Who owed you 1.2 or 1.3 million dollars?
> A. The county. At that particular time we were out that money. So that was all our cash out.

J.A. 146. He went on to say:

> We looked at the amount of manpower we had on the project, what would we do with that manpower if the project was stopped or delayed or slowed. And then it became a problem of trying to place that many people on work that we really didn't have a contract in other areas.

J.A. 149.

Finally, Kalina said the following: "[A]t that time we had a significant amount of labor expended into the projects that we were working on. It was approximately 1.3 million dollars, in that area, that the county owed us." J.A. 198. He said in another part of his testimony: "We had 1.3 million dollars of money that was due to us as we progressed forward with the work." J.A. 214. He also testified: "We just [had] too much to lose. If we lose these contracts we can't afford it, we'd be losing people, we'd be laying people off, and there's too many families involved." J.A. 199. He noted that, at the time of their last payment, "We did collect some money. Excuse me. Our receivables was still rather high in November of '05." J.A. 208.

In his motion for new trial, Munchak focuses on one exchange between the prosecutor and Smith during trial.

> Q. When you say there were 1.3 million invoices outstanding, who were those invoices with?
> A. They were with the county.

4

J.A. 96. Munchak is convinced that this is an assertion by Smith that Highland had already submitted invoices to the County at that time, in that amount. His motion is an attempt to proffer "new evidence" that he says refutes this claim.

In support of his argument that Smith, Kalina and Provini lied about the amount of money the County owed Highland, Munchak produces a statement by Thomas Durkin, County Chief Financial Officer, attesting that there was no outstanding invoice from Highland in mid-May 2005 in the amount of $1.3 million.[3] He also proffers a chart from a trade journal reporting that Highland Associates had $23.8 million in revenue for 2005. This, Munchak asserts, demonstrates an exaggerated or false claim by Smith, Provini and Kalina that the loss of the County's contract would have produced dire consequences for the firm.[4]

Motions for a new trial "are not favored and should 'be granted sparingly and only in exceptional cases.'" *United States v. Silveus,* 542 F.3d 993, 1005 (3d Cir. 2008) (quoting *Gov't of the V.I v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987)). We, first, conclude that the District Court did not err by relying upon a five-factor test to assess the motion:

---

[3] "At no time during that period [August 20, 2004, through July 25, 2005] did the County owe $1.3 million to Highland Associates. . . . In mid-May 2005, only three invoices from Highland Associates to the County were unpaid, resulting in an outstanding balance of $95,807.32. Highland later submitted to the County a $64,511.97 invoice for the period ending March 25, 2005, but Highland did not submit that invoice until October 2005." J.A. 320.

[4] In a second statement, Durkin states: "I do not know the total amount of receivables from the County Highland was carrying on their books in mid-May 2005. . . ." He goes on to say: "Highland submitted invoices totaling $681,546.76 on May 27, 2005. The following month, Highland submitted invoices totaling $536,544.11." J.A. 338.

5

> (a) the evidence must be in fact, newly discovered, *i.e.*, discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (quoting *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). Moreover, we conclude that the District Court's analysis of the evidence presented by Munchak was well within its discretion.

Even if we ignore Munchak's dubious assertion of diligence regarding the evidence he proffers,[5] he has a problem. The District Court correctly concluded that Munchak's motion does not expose false testimony. The evidence he proffers—Durkin's statement—is completely undermined by the clarification Durkin gave to the Prosecution. As Durkin's later statement makes evident, Highland was billing the County for large sums of money throughout that period of time. This is completely consistent with the partners' testimony that, due to the large amount of work they were doing for the County in that period of time, they feared the business consequences of reporting Munchak to the authorities. We would have to ignore the larger context provided in Durkin's subsequent statement to attach any significance to Munchak's evidence that on one particular date, Highland had not invoiced the County for precisely $1.3 million.

Likewise, a vague reference to 2005 revenues listed in one trade journal chart, listing revenue numbers of unknown provenance, is insufficient to help his cause. Even

---

[5] We by no means imply that the record supports Munchak's diligence.

if we assume that the number is accurate, Munchak does not give us anything beyond conclusory statements to enable us to understand how it discredits the partners' testimony. A revenue figure, without more, does not satisfy his burden to substantiate his argument that the partners gave false testimony. None of this, as Munchak claims: "dramatically weaken[s] the partners' claim that they acceded to the demand for cash out of fear." Appellant Brief, p. 45.

Ultimately, Munchak was required not just to convince us that the witnesses' testimony is not credible, but rather to make the case that evidence of their false testimony creates a reasonable probability of a different outcome at trial. [6] Since, as the District Court correctly concluded, his "new evidence" does not discredit the partners' testimony, it is impossible to conclude that it creates a reasonable likelihood (or, indeed, any rational chance) of a different outcome by the jury. This conclusion proves fatal to his claim, no matter how it is framed.

Under a due process review, "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *See United States v. Agurs,* 427 U.S. 97, 103 (1976). A new trial grounded in newly discovered evidence requires the party to show the evidence is "of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir. 1985) (quoting *Iannelli,* 528 F.2d

---

[6]Because of this, Munchak would have failed on this element even if the *Larrison* test had been used. *United States v. Massac*, 867 F.2d 174, 178 (3d Cir. 1989).

at 1292).  A *Brady* violation occurs when material evidence favorable to the defense is suppressed.  *Simmons v. Beard*, 590 F.3d 223, 234 (3d Cir. 2009).  "Evidence is 'material' where 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Munchak fails to meet his evidentiary burden on any of these.  Because of this, we conclude that the District Court did not err by denying the motion.

For all of these reasons, we will affirm the order of the District Court.