**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2609
_____

UNITED STATES OF AMERICA

v.

GONGDA XUE,
                                    Appellant

_____

On appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cr-00122-001)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 23, 2023

Before: CHAGARES, *Chief Judge*, and BIBAS and MATEY, *Circuit Judges*

(Filed: July 19, 2023)
_____

OPINION[*]
_____

BIBAS, *Circuit Judge*.

Sibling confidences matter, but they are still subject to the law. Gongda Xue and his sister both worked in biomedical research and stayed in touch. Over several years, they swapped emails and attached documents with confidential research belonging to their

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

employers. Eventually, Xue was indicted on a dozen counts: five counts each of wire fraud and stealing trade secrets under 18 U.S.C. §§ 1343, 1832(a)(3), and one count each of conspiracy to commit wire fraud and conspiracy to steal trade secrets under §§ 1349, 1832(a)(5). After a two-week trial, Xue was acquitted of one count each of wire fraud and stealing trade secrets but convicted on the other ten. He was sentenced to time served (roughly nine months in jail and two years' home detention) plus a $1000 special assessment.

On appeal, Xue challenges the jury's verdict and the District Court's denial of his motion for a new trial. He faces an uphill climb. We review the jury's verdict "highly deferential[ly]" and must uphold it so long as it is "bare[ly] rational[ ]." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430, 432 (3d Cir. 2013) (en banc). And we review the judge's denial of his new-trial motion for abuse of discretion. *United States v. Noel*, 905 F.3d 258, 266–67 (3d Cir. 2018).

Xue makes four arguments. On the jury verdict, he says there was insufficient evidence to find that (1) the emails had trade secrets, (2) he knew that they were trade secrets, or (3) he was part of a conspiracy. And on the new-trial motion, he claims that the District Court slighted his arguments. All four fail.

*First*, the jurors rationally found that the stolen documents contained trade secrets. Information is a trade secret if the owner (a) takes reasonable steps to keep it confidential and (b) gets economic value from the secrecy. 18 U.S.C. § 1839(3). Here, there was enough evidence that the information Xue shared met both prongs.

On the first prong, an expert testified to the owner's confidentiality efforts. Among other things, he noted the company's physical and digital security, nondisclosure

2

agreements, and training on confidentiality. Other courts have found similar measures reasonable to maintain secrecy. *See, e.g.*, *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660–61 (9th Cir. 2020).

On the second prong, that expert also testified to the value of the information's secrecy. The kind of basic research that Xue shared gave his employer a competitive edge. For instance, a company must build up a body of research before sending a drug into clinical trials. But if someone publicized or leaked that research, competitors could use it to cut into the company's "head start" on getting valuable drugs to market. App. 840.

Xue offers two counterarguments, but neither is convincing. First, he emphasizes that *he* got no value from the information. But that does not matter. Rather, we ask whether secrecy was valuable to the secrets' *owner*. *See Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 913–14 (3d Cir. 2021). Second, he says the documents contained public as well as nonpublic information. Yet that combination does not make the secret part any less secret or less valuable. Even a nonpublic combination of public information can be a trade secret. *See AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 96 (4th Cir. 2018). So there was proof beyond a reasonable doubt that the documents contained trade secrets.

*Second*, the jurors were rational in finding that Xue acted with the necessary intent. For the wire-fraud charges, he had to act with "specific intent to defraud." *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992). And for the trade-secrets charges, he had to get proprietary information knowing that it had been "obtained … without authorization." 18 U.S.C. § 1832(a)(3).

The government proved both mental states. The best evidence was Xue's own emails. When he sent documents to his sister, he told her that the "two files are highly confidential! you should NOT show to another person. … You do need to find out an excuse or reason to work on it or speak about it in public WITHOUT MENTIONING anything related to our lab or institute. … You better forward this email to your private email address and delete." App. 4034. Xue also asked his sister for "materials specifically for industrial interest/purpose." App. 4138. And when he got documents from his sister (bearing her employer's logo), he would forward them to his personal email account.

Plus, Xue had worked in the industry for years. He had signed many confidentiality agreements, gotten confidentiality training, and otherwise taken part in standard industry practices. And he knew whom his sister worked for and what their policies were—he had even been a visiting fellow there. Plus, when he covertly did research for his sister's competing startup, he specifically verified that he had deleted his research. From all this evidence, the jury inferred that Xue had intended to defraud by eliciting information that he knew was proprietary and gotten without authorization. That inference was rational.

*Third*, the jurors were also rational in finding that Xue was part of wire-fraud and trade-secret conspiracies. The only additional element required for these crimes is an agreement. Xue's agreement was with his sister. They repeatedly exchanged emails with confidential information. When he asked her for industrial research, she responded: "This is … my job. I will send you the whole set [of] information today." App. 4138. As promised, she sent a trove of confidential information. And later, when Xue and his sister were each trying to start their own companies, they swapped caches of stolen documents.

Xue says he did not know how his sister was using the information or that she was conspiring with others. But one can belong to a conspiracy without knowing its scope. *United States v. De Peri*, 778 F.2d 963, 975 (3d Cir. 1985). The jurors inferred that Xue had agreed at least with his sister to defraud and steal trade secrets. That inference was rational too.

*Finally*, the District Court properly denied Xue's motion for a new trial. He says he deserves a new trial for the same reasons that he thinks the jury got it wrong. But "[m]otions for a new trial based on the weight of the evidence are not favored." *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987). We must grant them "sparingly and only in exceptional cases." *Id.* Though the District Court's order did not march through each of his arguments and each piece of evidence, it did not need to. It recounted the key evidence and found "no serious danger that a miscarriage of justice occurred, even considering the credibility of the witnesses." App. 4 n.1. We agree.

\* \* \* \* \*

At bottom, Xue simply rehashes his arguments from trial. But he has no silver bullet—no procedural calamity or show-stopping error. The government put on a series of incriminating witnesses and documents. Xue put on his own witnesses and tried to explain away the documents. In the end, the jury bought the government's story. That was hardly irrational, so we will affirm.